IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATHESON TRI-GAS, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-CV-0248 |
| | § | |
| FLEXTM, INC., | § | |
| Defendant. | § | |

# MEMORANDUM AND ORDER

In this breach of contract action, Defendant FlexTM, Inc. ("FlexTM") has filed a Motion to Dismiss For Lack of Personal Jurisdiction and For Improper Venue [Doc. # 3] (the "Motion") asserting lack of personal jurisdiction and improper venue. Plaintiff, Matheson Tri-Gas, Inc. ("Matheson") filed a timely response, to which Defendant replied.[1] The Motion is now ripe for decision. Having considered the parties briefing, the applicable legal authorities, and all pertinent matters of record, the Court concludes that the Motion should be **denied**.[2]

---

[1] *See* Plaintiff's Response to Defendant's Motion [Doc. # 10]; Defendant's Reply to Plaintiff's Response [Doc. # 11].

[2] The Court determined that the Motion should be denied after considering the evidence Defendant submitted with its Reply. Consequently, Plaintiff's Motion to Strike Or, Alternatively, Motion for Leave to File Sur-Reply [Doc. # 12] and Defendant's Unopposed Motion for Leave to Submit Evidence [Doc. # 13] are **denied as moot**.

## I. BACKGROUND

Plaintiff is a Delaware corporation whose principal place of business is Basking Ridge, New Jersey. Defendant is a North Dakota corporation whose principal place of business is Wahpeton, North Dakota.[3] Defendant does not operate, or otherwise conduct any business, in the State of Texas. Additionally, none of the interactions between Plaintiff and Defendant in this case occurred in, or were directed towards, the State of Texas.

On April 1, 2010, Plaintiff and non-party Ro-Banks Tool & Manufacturing Co. ("Ro-Banks") entered into a product supply agreement with respect to the purchase and sale of liquid argon (the "Argon Agreement"). The Argon Agreement, which is governed by Texas law, contains mandatory forum selection clause (the "Forum Selection Clause"). Specifically, the Forum Selection Clause provides that the parties to the Argon Agreement "agree to consent to the exclusive jurisdiction of the courts of the State of Texas with regard to any dispute arising hereunder." Argon Agreement [Doc. # 10-3], ¶ 12(f).

---

[3] Defendant removed this case from the 127th Judicial District Court of Harris County, Texas to Federal Court pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Notice of Removal [Doc. # 1], ¶¶ 4-5. There is no dispute that for subject matter jurisdiction purposes, Plaintiff and Defendant are "completely diverse" and the amount in controversy exceeds the $75,000 statutory threshold.

Prior to entering into the Argon Agreement, in August 2007, Ro-Banks and a predecessor entity of Plaintiff also entered into an agreement with respect to the purchase and sale of bulk oxygen (the "Oxygen Contract"). Oxygen Contract [Doc. # 10-2]. The Oxygen Contract, which is governed by West Virginia law, does not contain a forum selection clause. Whether the Court may exercise personal jurisdiction over Defendant in this case depends entirely on whether there is *prima facie* evidence of Defendant's agreement to the Argon Agreement. Therefore, the Court focuses in this Memorandum and Order on the Argon Agreement.

On November 19, 2010, Defendant and Ro-Banks entered into an Asset Purchase Agreement (the "APA"). Pursuant to the terms of the APA, Defendant purchased from Ro-Banks, among other assets, "all contracts and agreements to which [Ro-Banks] is a party including, without limitation, all service contracts, product distribution agreements, rental agreements and franchise agreements, as listed on Exhibit 2.1(d) (collectively, the 'Operating Contracts'); to which [Defendant] has expressly informed [Ro-Banks] it has an interest their continuation." APA [Doc. # 10-7], ¶ 2.1(d). The parties to the APA did not prepare an Exhibit 2.1(d).[4] According to Bradley Odegard, Defendant's President,

---

[4]  *See* Affidavit of Bradley A. Odegard [Doc. # 11-1], ¶ 3 ("The Asset Purchase Agreement between Ro-Banks and FlexTM only included Exhibit 2.1(a) and
(continued…)

Defendant neither had any interest in continuing the Argon Agreement nor intended or expected for the Argon Agreement to be a "Purchased Asset" within the meaning of the APA.[5]

Less than a month after Defendant completed its purchase of Ro-Banks's assets, it began purchasing argon from Plaintiff's predecessor-in-interest[6] and continued making purchases of argon from Plaintiff thereafter. Defendant took delivery in North Dakota of all of its purchases from Plaintiff. The location of the source of Plaintiff's supply of this argon is not established by the record, but there is no evidence that the supply originated in Texas. Defendant stored the argon in a tank located on Ro-Banks's former property in North Dakota, property that Defendant acquired (or at least acquired a right to occupy) via the APA. Defendant cites no evidence that the pricing of its argon purchases from Plaintiff or its predecessor differed from what was required under the Argon Agreement.

On October 2, 2014, Josh Rahn, Defendant's Controller and Human Resources Manager, emailed Vince Watje, his sales contact with Plaintiff, asking

---

(continued…)
4.1(b). The Agreement did not include Exhibits 2.1(d), 2.1(f), 2.1(h), 6.4, 6.11, 10.1(c), or 12.6").

[5]  *Id.* at ¶ 4.

[6]  Invoice, dated January 25, 2011 [Doc. # 10-9], at ECF 1; Invoice, dated January 31, 2011 [Doc. # 10-10].

for a copy of the "lease" governing the argon storage tank. On October 15, 2014, Watje responded that he had obtained a copy of the Argon Agreement and that he intended to bring a copy of that agreement to Rahn the next day. The Argon Agreement was not attached to Watje's email. The record before the Court includes no evidence that Watje provided a copy of the Argon Agreement to Rahn or any of Defendant's other employees on or before October 16, as he had promised.

On October 20, 2014, Watje and Gregg Hoffmann, Plaintiff's Regional General Manager, met with Rahn and Odegard. According to Plaintiff, Watje and Hoffmann brought copies of the Argon Agreement to this meeting, discussed the agreement with Rahn and Odegard, and left copies of it with Rahn and Odegard.[7] Plaintiff also contends that at no time during the meeting, or in any follow-up thereto, did Defendant claim it was not bound by the Argon Agreement, object to it, or dispute any of its terms.[8] Defendant sharply disagrees with Plaintiff's description of what transpired during the October 20, 2014 meeting. Specifically, Odegard avers that during the meeting, the Argon Agreement was not discussed

---

[7] Declaration of Vince Watje [Doc. # 10-11], ¶¶ 5-6; Declaration of Gregg Hoffmann [Doc. # 10-1], ¶¶ 3-4.

[8] Declaration of Vince Watje [Doc. # 10-11], ¶ 7; Declaration of Gregg Hoffmann [Doc. # 10-1], ¶ 6.

5

and that neither he nor Rahn ever received a copy.[9] Odegard also avers that at no point during the meeting did Watje or Hoffmann state that Plaintiff believed Defendant was party to the Argon Agreement.[10]

Following the October 20, 2014 meeting, Defendant continued to purchase argon from Plaintiff for approximately three years. According to Plaintiff, Defendant's argon purchases were made in accordance with the terms of the Argon Agreement, including its pricing provisions.[11] In contrast, Defendant asserts that all of its purchases from Plaintiff were made and priced on a per-transaction basis, and not pursuant to any binding agreement between it and Plaintiff.

On October 16, 2017, Defendant informed Plaintiff that it would no longer purchase argon from Plaintiff because it believed it had been materially overcharged by Plaintiff for a significant period of time. Nearly a month later, on November 14, 2017, Hoffmann emailed Odegard a copy of the Argon Agreement and asked him when he would have time to discuss the agreement. According to Defendant, Hoffmann's November 14, 2017 email was the first time it became

---

[9] Affidavit of Bradley A. Odegard [Doc. # 11-1], ¶ 7.

[10] *Id.*

[11] Declaration of Vince Watje [Doc. # 10-11], ¶ 7; Declaration of Gregg Hoffmann [Doc. # 10-1], ¶ 6.

aware of the Argon Agreement or that Plaintiff believed it had a binding contract with Defendant regarding the sale of argon.

Plaintiff filed the instant litigation against Defendant in December 2019. Plaintiff alleges, among other causes of action, breach of the Argon Agreement and seeks damages resulting therefrom.

## II. LEGAL STANDARDS

### A. Personal Jurisdiction

Plaintiff has the burden of establishing that this Court has personal jurisdiction over Defendant. *See Int'l Energy Ventures Mgmt., LLC v. United Energy Group, Ltd.*, 800 F.3d 143, 151 (5th Cir. 2015). On a motion to dismiss, a plaintiff is required to present only a *prima facie* case for personal jurisdiction. *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Where, as here, the Court has not conducted a full evidentiary hearing, the Court makes only a preliminary finding on the basis of the evidence presented by the parties "to help it resolve the jurisdictional issue," and must "construe all disputed facts in Plaintiff's favor and consider them along with the undisputed facts." *Id.*[12]

---

[12] That the parties have engaged in jurisdictional discovery does not heighten Plaintiff's burden beyond a *prima facie* showing. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242 (5th Cir. 2008) (holding, after limited jurisdictional discovery, that "[b]ecause the district court did not conduct a
(continued…)

7

Courts in Texas may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *DeJoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 388 (5th Cir. 2015) (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013)). In Texas, the long-arm statute extends to the limits of federal constitutional due process. *See Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013).

Jurisdiction may be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984), the court may exercise "general" jurisdiction over any action brought against that defendant. *Id.* at 414 n.9. Plaintiff does not assert that the Court has general personal jurisdiction over Defendant.

Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n. 8. "Asserting personal jurisdiction comports with due process

---

(continued…)
full-blown evidentiary hearing, it should have required [the plaintiff] to establish only a *prima facie* case for personal jurisdiction.").

8

when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice." *DeJoria*, 804 F.3d at 388 (citing *Moncrief*, 414 S.W.3d at 150). A defendant establishes minimum contacts with a state when he purposefully avails himself "of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (citations omitted). "In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice." *Id.* (quoting *Moncrief*, 414 S.W.3d at 154).

"Personal jurisdiction, however, is a waivable right, and a freely-negotiated forum-selection clause is sufficient to constitutionally establish personal jurisdiction." *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 632 (5th Cir. 2015) (internal citations and quotation marks omitted); *see also Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) ("Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a heavy burden of proof.") (internal quotation marks omitted); *Alliantgroup, L.P. v. Feingold*, 2009 WL 1109093, at *9 (S.D. Tex. Apr. 24, 2009) ("A forum-selection clause alone, without a specific additional agreement as to personal jurisdiction, is sufficient evidence of consent to personal jurisdiction in the designated state."); *Kevlin Servs., Inc. v. Lexington State Bank*,

9

46 F.3d 13, 15 (5th Cir. 1995). Additionally, "[w]here such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) (internal citations omitted).

### B. Venue

Federal Rule 12(b)(3) allows defendants to move for dismissal based on improper venue. FED. R. CIV. P. 12(b)(3); *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1047–48 (S.D. Tex. 2000); *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff. *Laserdynamics Inc. v. Acer America Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002); *Bigham*, 123 F. Supp. 2d at 1048. If there is no evidentiary hearing, a plaintiff may carry its burden by presenting facts, taken as true, that establish venue. *Laserdynamics, Inc.*, 209 F.R.D. at 390. Courts will accept uncontroverted facts in a plaintiff's pleadings as true, and will resolve any conflicts in the plaintiff's favor. *Id.*

## III. ANALYSIS

### A. Personal Jurisdiction Based on the Argon Agreement

Plaintiff alleges the Court may exercise personal jurisdiction over Defendant, a nonresident of the State of Texas, because it is party to the Argon Agreement and thus subject to its mandatory forum selection provision. Other than potentially the Forum Selection Clause, it is undisputed that Defendant has no contacts with Texas. Plaintiff argues that Defendant is bound by the Forum Selection Clause for at least one of three reasons: (i) Defendant expressly assumed the Argon Agreement pursuant to the APA when it acquired Ro-Banks's operating asserts; (ii) Defendant impliedly assumed the Argon Agreement, or is obligated to continue performing thereunder, under the equitable doctrine of direct benefit estoppel; or (iii) Defendant ratified the Argon Agreement after obtaining actual knowledge of its terms during the October 20, 2014 meeting among Rahn, Odegard, Watje and Hoffmann. Defendant denies ever agreeing to or adopting the Argon Agreement, either expressly or by implication.[13] The Court concludes

---

[13] Defendant's objection to the applicability of the Forum Selection Clause in this case is based solely on its argument that it is not party to the Argon Agreement. Defendant does not argue that the Forum Selection Clause is "unreasonable." *See Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)) (holding that a forum-selection clause may be found unreasonable when the movant shows: (1) that it is the product of fraud or overreaching; (2) that it violates a strong public policy of the forum; (3) that enforcement of the clause effectively deprives plaintiff of his day in court; or (4) that the fundamental unfairness of the chosen law will deprive
(continued…)

based on the evidence of record that Plaintiff has made a *prima facie* showing that Defendant ratified the Argon Agreement and thus is bound by the Forum Selection Clause. The Court does not reach the two other theories proffered by Plaintiff.

### 1. Contract Ratification Under Texas Law

"Texas law provides that 'if a party acts in a manner that recognizes the validity of a contract with full knowledge of the material terms of the contract, the party has ratified the contract and may not later withdraw its ratification and seek to avoid the contract.'" *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 250 (5th Cir. 2016) (quoting *Advanced Nano Coatings, Inc. v. Hanafin*, 478 F. App'x 838, 843–44 (5th Cir.2012)); *Verizon Corp. Servs. Corp. v. Kan–Pak Sys., Inc.*, 290 S.W.3d 899, 906 (Tex. App.—Amarillo 2009, no pet.)).

Plaintiff's representatives aver that on October 20, 2014, they physically provided Defendant with copies of the Argon Agreement. For approximately three years following the October 2014 meeting, Defendant continued to purchase argon

---

(continued…)
plaintiff of a remedy). Nor does Defendant argue that Plaintiff's Argon Agreement claims do not arise under the Forum Selection Clause. *See Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2018 WL 1964180, at *4 (E.D. Tex. Apr. 25, 2018) (citing *Ginter ex rel. Ballard v. Belcher, Predergrast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008)) ("If the forum-selection clause is found to be reasonable, courts must then determine whether the claims arise under the forum-selection clause.").

and lease an argon bulk storage tank from Plaintiff. According to Plaintiff, the pricing Defendant paid for argon and use of the storage tank was the pricing provided for in the Argon Agreement.

Defendant cites no evidence that the terms of its argon purchases and bulk storage lease payments to Plaintiff between October 2014 and October 2017 differed from, or were inconsistent with, the terms of the Argon Agreement. Rather, Defendant strenuously denies having any knowledge of the Argon Agreement prior to Hoffmann's November 2017 email to Odegard.

At this stage of the proceedings the law requires this Court to resolve factual disputes, such as whether copies of the Argon Agreement actually were provided to Defendant at the October 20, 2014 meeting, in Plaintiff's favor. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id.* Resolving the disputed facts in Plaintiff's favor, as the Court must given the current posture of this case, Plaintiff has made a *prima facie* showing that from and after the October 20, 2014 meeting, Defendant (i) had possession of a copy of the Argon Agreement, (ii) had actual knowledge of its material terms, and

13

(iii) performed thereunder for a period of nearly three years. Accordingly, Plaintiff has made a *prima facie* showing that Defendant ratified the Argon Agreement and has submitted to the personal jurisdiction of this Court pursuant to the terms of the Forum Selection Clause. Moreover, because Defendant does not challenge the reasonableness of the Forum Selection Clause, enforcement of that provision "does not offend due process." *Rudzewicz*, 471 U.S. at 473 (1985). The Motion is **denied** to the extent it seeks dismissal of Plaintiff's claims for breach of the Argon Agreement based on lack of personal jurisdiction.

### 2. Venue

In addition to challenging personal jurisdiction, Defendant also contests whether venue for this case is proper in the Southern District of Texas. Plaintiff initiated this litigation in Texas pursuant to the terms of the Forum Selection Clause. The Forum Selection Clause is a mandatory provision. As discussed in section III.A.1 *supra*, Plaintiff has made a *prima facie* showing that Defendant ratified the Argon Agreement and is thus subject to its Forum Selection Clause. Given that the Court at this stage must credit Plaintiff's evidence that Defendant agreed to the mandatory Forum Selection Clause, which provides the "courts of the State of Texas" with exclusive jurisdiction over any dispute arising under the Argon Agreement, the Court must conclude that Defendant has waived its right to challenge the propriety of venue in the Southern District of Texas. *See City of New*

14

*Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) ("A party may waive its rights by explicitly stating that it is doing so, by allowing the other party the right to choose venue, or by establishing an exclusive venue within the contract."); *Argyll Equities LLC v. Paolino*, 211 F. App'x 317, 319 (5th Cir. 2006) ("Contrary to [the defendant's] contention that the clause only explicitly provides for exclusive jurisdiction and not exclusive venue, the former dictates the latter, as submission to the exclusive jurisdiction of one set of courts necessarily excludes venue in all other courts."). Consequently, the Motion is **denied** insofar as it seeks dismissal or transfer of Plaintiff's claims for breach of the Argon Agreement on venue grounds.[14]

---

[14] Dismissal or transfer of Plaintiff's Argon Agreement claims on venue grounds also is unwarranted on the basis of judicial efficiency. Defendant argues that this case should be transferred to the District of North Dakota because venue is only "proper" there. Specifically, Defendant argues that it resides in the District of North Dakota and that the only jurisdiction where a substantial part of the events giving rise to the claims in issue in this case occurred was the District of North Dakota. *See* 28 U.S.C. §1391(b)(1)-(2). However, once transferred to the District of North Dakota, Plaintiff could then, pursuant to the Supreme Court's holding in *Atlantic Marine Construction Company v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), move to transfer the case under 28 U.S.C. § 1404(a), which "permits transfer to any district where venue is proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine*, 571 U.S. at 59.

The Supreme Court of the United States altered the analysis for transferring venue under § 1404(a) when a forum-selection clause is involved because "'the interest of justice' is served by holding parties to their bargain." *Id.* at 66. "Because [the transfer analysis mandated by *Atlantic Marine*] will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in
(continued…)

### B. The Oxygen Contract

In its Complaint, Plaintiff also asserts claims for breach of the Oxygen Contract. The Oxygen Contract, unlike the Argon Agreement, has no forum selection provision. Defendant's only connection to the State of Texas is the Argon Agreement's Forum Selection Clause. Therefore, it is clear that if the Court has the authority to exercise personal jurisdiction over Defendant with respect to claims arising from the Oxygen Contract, any such authority can derive only from the Court's personal jurisdiction over Defendant relating to Plaintiff's Argon Agreement claims. The parties did not address in their briefing the issue of whether the Court may exercise "supplemental" personal jurisdiction over Defendant regarding Plaintiff's Oxygen Contract claims by virtue of its personal jurisdiction over Defendant, at least at this stage of the litigation, pursuant to the Forum Selection Clause. The Court declines to reach this complex issue *sua sponte*. Instead, Defendant must file an Advisory by **12:00 p.m. on June 1, 2018**, stating whether or not Defendant agrees to pretrial litigation of the parties' disputes in this Court pertaining to the Oxygen Contract. Any agreement to, or pursuit of,

---

(continued…)
unusual cases." *Id.* at 64. Therefore, even if the Court transferred the case to the District of North Dakota, that court likely would be bound to transfer the case back to this or another district in the State of Texas. Transfer of this case to North Dakota is not only inefficient; it is fundamentally inconsistent with the Supreme Court's intentions expressed in *Atlantic Marine*.

pretrial litigation in this Court on the Argon Agreement or the Oxygen Contract is subject to reservation of Defendant's rights to contest personal jurisdiction and venue after full discovery and an evidentiary hearing on jurisdiction (and, if necessary, venue) prior to summary judgment briefing and rulings, and/or trial on the merits. If Defendant elects to contest supplemental personal jurisdiction and venue in this Court with respect to claims regarding the Oxygen Contract, the Court, at the upcoming initial pretrial conference, will set a briefing schedule on that issue.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss For Lack of Personal Jurisdiction and For Improper Venue [Doc. # 3] is **DENIED without prejudice**. It is further

**ORDERED** that Plaintiff's Motion to Strike Or, Alternatively, Motion for Leave to File Sur-Reply [Doc. # 12] and Defendant's Unopposed Motion for Leave to Submit Evidence [Doc. # 13] are **DENIED as moot**. It is further

**ORDERED** that Defendant shall file the Advisory required by this Memorandum and Order **on or before 12:00 p.m. on June 1, 2018**.

SIGNED at Houston, Texas this 24th day of **May, 2018**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE